



TM 231  Name Ralph Stumpf
Cust # 21140447



# Customer Account Application

This Customer Application (this "Application") is made to US Foods, Inc., doing business as US Foods, and all of its affiliates, divisions, subsidiaries and assigns (collectively the "Sellers") for the purpose of inducing Sellers to extend credit accommodations to the Applicant named below:

## SHIPPING AND BILLING INFORMATION

| SHIP TO: Hines Ward's Table 86, LLC | BILL TO: X Check Here If Billing Address Is Same As Delivery Address |
|---|---|
| Applicant Legal Name (INC,LLC,LP) Hines Ward's Table 86 | |
| Trade Name/Doing Business As 530 Northpointe circle | Billing Address |
| Delivery Address (Attach Location Sheet If More Than One)* Seven Fields   PA   16046 | City                 State/Province          Zip |
| City Butler       State/Province US      Zip | Country |
| County                  Country | Accounts Payable Contact   Title        Telephone Number Shiller L @ Aol.com |
| Telephone Number | E-mail Address                            Fax Number |

*Location sheet should include corresponding trade names

Page 1 of 3

## TELL US ABOUT YOUR OWNERSHIP

☐ C-Corporation  ☐ S-Corp  ☒ Limited Liability Company (LLC)  ☐ Limited Partnership (LP)  ☐ Proprietorship  ☐ Non-Profit  ☐ Government  ☐ Other

State of Formation: **PA.**

Government Funded? ☐ Yes ☒ No _____ % of Revenue Gov't Funded    Medicaid/Medicare Funded? ☐ Yes ☒ No _____ % of Revenue Med Funded

Building/Facility: ☐ Owned ☒ Leased    Date Business Opened or Ownership Changed: **4-1-2015**

Federal ID Number: [REDACTED]

### OWNER/OFFICER/AUTHORIZED CORPORATE AGENT INFORMATION

Name: **Howard A. Shiller**
Social Security Number: **6115**
Title: **Managing Member**
Home Address: **347 N. New River Dr. E. #1802**
City, State, Zip: **Ft. Lauderdale, FL 33301**
Driver's License Number: [REDACTED]
Home Telephone Number: **954-522-0800**
Cell Telephone Number: **305-785-7291**

## WHO ELSE DO YOU DO BUSINESS WITH?

Vendor Name (Present Food Supplier): **US Foods** - Jerome DeHS Grill / Eddie Ganzos / LoHS Grille / Texas Grille
Account Number:
City/State:
Telephone No.:

Vendor Name:
Account Number:
City/State:
Telephone No.:

Vendor Name: **PNC**
Account Number:
Bank: 
City/State: **Ft. Lauderdale, FL / Pit, PA**
Contact Name: **Adam Golden**
Telephone No.: **412-913-0864**
Checking Account #: [REDACTED]
Loan Account #: **N/A**

DO YOU HAVE ANY OTHER EXISTING BUSINESSES? ☒ Yes ☐ No
(Please attach list if more than one business)

**Auntie Anne's Pretzels**
Business Name
**Monroeville Mall, Monroeville, PA**
Address / City/State

DO YOU HAVE EXISTING OR PRIOR US FOODS ACCOUNTS? ☒ Yes ☐ No
(Please attach list if more than one business)

**See above!**
Business Name
City/State
Account Number

## DOCUMENTATION REQUESTS

1) RESALE OR EXEMPT TAX CERTIFICATE: **TAX WILL BE CHARGED WITHOUT THESE DOCUMENTS**
2) YOUR MOST RECENT TWO YEARS FINANCIAL STATEMENTS

### APPLICANT'S CERTIFICATIONS

This customer account application ("Application") is being furnished by the undersigned ("Applicant") to US Foods, Inc. and each of its operating subsidiaries and affiliates (collectively, "Seller") for the purpose of inducing Seller to extend credit and/or provide goods/services to Applicant. Applicant certifies that the information furnished under this Application and any other financial statements furnished in connection with this Application, is true, correct and complete. Applicant understands and agrees that Seller's acceptance of this Application shall in no way bind or commit Seller to extend credit and/or provide goods/services to Applicant. In support of this Application, Applicant represents and warrants that it is generally able to pay all debts as they become due and has capital sufficient to carry on Applicant's business. Applicant understands and agrees to be bound by the terms contained in this Application and all invoices and other documents furnished by Seller from time to time, all of which are incorporated in this Application by reference. Applicant understands that Seller intends to rely upon the information contained in this Application or otherwise provided to Seller, and Applicant agrees to promptly advise Seller, in writing via certified mail, of any material change in the information provided in this Application, including, but not limited to, change of ownership, state of formation or residence, address or telephone. Applicant understands that Seller will retain this Application whether or not it is approved. Applicant's principals ("Principals") authorize Seller to investigate from time to time Applicant's and Principals' business and personal credit as well as trade history, bank and personal references (whether or not listed in this Application) for customary credit information, a copy (xerox, carbon photograph, electronic file or reproduction, etc.) of this authorization and signature(s) of the undersigned, shall be deemed to be the equivalent of the original and can be used as such to confirm the information contained on this Application, including, but not limited to, sending a copy of this Application to the trade, bank and personal references, and to release information to other creditors regarding Applicant's credit experience with Seller. Applicant agrees to provide copies of audited financial statements of Applicant and/or Principal(s) in form acceptable to Seller at anytime upon request by Seller. The Applicant authorizes Applicant's bank(s)/lender(s) to release information about the Applicant, including date account(s) opened, average checking balance, account history, open loan(s) balance(s), line(s) of credit, availability under line(s) of credit, payment history, covenants and their status, and any security interests, along with any other information that may assist Seller in establishing an open account and credit line. Seller agrees that information obtained will be kept in the strictest of confidence. THE UNDERSIGNED IS EXECUTING THIS APPLICATION IN HIS/HER CAPACITY AS AN OFFICER OF APPLICANT. APPLICANT UNDERSTANDS THAT THE TERMS AND CONDITIONS CONTAINED IN THIS APPLICATION ARE MATERIAL TO AND SPECIFICALLY MADE A PART THIS APPLICATION.

## TERMS AND CONDITIONS

In consideration of the extension of credit or the delivery of goods and/or services by Seller to Applicant, Applicant agrees to the following terms and conditions:

1. If this Application is approved, Seller, in Seller's sole discretion, and notwithstanding any request of Applicant, will establish a maximum credit line (if applicable) for Applicant and shall have the right to increase, decrease or terminate Applicant's credit privileges under this Application at any time without prior notice to Applicant, except as otherwise provided by law.

2. All purchases by Applicant of goods and/or services from Seller will be made in accordance with the terms and conditions of this Application, and any invoice, promissory note, distributor agreement, and/or other documents evidencing Applicant's obligations to Seller (each, a "subsequent agreement"), all of which are incorporated in this Application by this reference. To the extent that there is any conflict between the terms and conditions set forth in this Application and any subsequent agreement, the terms and conditions of the subsequent agreement shall control. To the extent Applicant is part of or subsequently becomes part of a national or regional pricing program governed by a distributor agreement, Applicant acknowledges and agrees that it shall be bound by the terms and conditions of any such distributor agreement, notwithstanding that Applicant is not and will not be a signatory to such agreement. Applicant further agrees to waive, release, forever discharge and hold harmless the Seller, together with all of Seller's officers, directors, employees, attorneys and agents, from any and all losses, damages, costs, expenses, rights, claims, demands, judgments, obligations, actions and causes of action, which Applicant may have arising out of or in connection with any dispute or disagreement regarding whether or not Applicant is bound by the terms of such distributor agreement. Applicant agrees and understands that this is a legally binding agreement, provided, that Seller may, in Seller's sole discretion, change the terms and conditions of this Application. Any such changes shall apply to all sales after such change is made.

3. Title to all goods purchased from Seller shall pass upon delivery to the receiving dock of Applicant and acceptance by authorized signature, subject to rejection of certain items by notation on the invoice. Applicant agrees that it shall be subject to and bound by Seller's "Customer Policy," which Customer Policy is incorporated herein by reference. Seller's Customer Policy may be found at www.usfood.com.

4. Payment of the purchase price for goods and/or services acquired from Seller shall be made pursuant to the terms set forth on each invoice, and Applicant agrees to pay all charges according to the payment terms established in said invoice. The entire outstanding balance due to Seller on all invoices shall become due in full immediately upon any of the following: (i) a default in the payment of any invoice, or (ii) a default by Applicant under any related subsequent agreement; including, without limitation, any guaranty provided at any time in support of this Application. Unless otherwise agreed in writing by the Seller, Applicant agrees to pay interest in the amount of 1.5% per month, or the maximum rate that Applicant may lawfully contract to pay, whichever is less, and in all events calculated in accordance with applicable law, on any payment considered past due until collected. Applicant agrees to pay all costs of collection incurred by Seller, including reasonable attorneys' fees and expenses.

5. This Application and all transactions between Applicant and Seller shall be governed by and interpreted in accordance with the laws and decisions of the State of Delaware, without regard to the conflicts of law provisions of the State of Delaware.

6. Applicant may not assign any relationship with Seller that arises out of this Application or any subsequent agreement without the prior written consent of Seller, which consent may be withheld for any reason. Applicant agrees to immediately notify Seller via certified mail of any sale of a significant portion of the assets or business of Applicant, or a sale of a substantial interest in the capital stock or other ownership interest of Applicant and Seller retains the right to immediately terminate Applicant's credit privileges upon receipt of such notice.

7. IF THIS APPLICATION IS NOT APPROVED IN FULL OR IF ANY OTHER ADVERSE ACTION IS TAKEN WITH RESPECT TO APPLICANT'S CREDIT WITH SELLER, APPLICANT HAS THE RIGHT TO REQUEST WITHIN 60 DAYS OF SELLER'S NOTIFICATION OF SUCH ADVERSE ACTION, A STATEMENT OF SPECIFIC REASONS FOR SUCH ACTION, WHICH STATEMENT WILL BE PROVIDED WITHIN 30 DAYS OF SAID REQUEST. The Federal Equal Credit Opportunity Act prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance programs; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning the creditor is the Federal Trade Commission, Washington, D.C.

8. Applicant irrevocably consents and submits to the non-exclusive jurisdiction of any state or federal court located in the State of Illinois in connection with any actions or proceedings arising from, relating to or in connection with Applicant's obligations to Seller or this Application. Applicant waives any right it may have to change the venue of any litigation brought against it by Seller.

9. Applicant agrees that all information as to source, quantity, and price of goods and services provided by Seller shall be maintained in confidence and shall not (without Seller's prior written consent, said consent not to be unreasonably withheld) be released to any private third party for any reason whatsoever other than pursuant to a validly issued subpoena from a court or governmental authority having jurisdiction over Applicant, pursuant to the rules, regulations or requirements of any state or federal agency or department or pursuant to a discovery request made under applicable court rules and to which Applicant is required to respond.

10. APPLICANT (I) AGREES THAT SELLER MAY, AT SELLER'S SOLE OPTION, REQUIRE APPLICANT TO ARBITRATE ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS APPLICATION, ANY CREDIT EXTENDED BY SELLER TO APPLICANT OR ANY OTHER ISSUE WITH THE AMERICAN ARBITRATION ASSOCIATION OR ANY OTHER RECOGNIZED ARBITRATION GROUP IN ACCORDANCE WITH ITS COMMERCIAL ARBITRATION RULES, AND ANY JUDGMENT OR AWARD RENDERED IN CONNECTION WITH SUCH ARBITRATION SHALL BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF; (II) CONSENTS TO SUCH ARBITRATION IN THE STATE OF ILLINOIS, AND TO THE APPLICATION OF DELAWARE LAW WITHOUT REGARD TO THE CONFLICTS OF LAW PROVISIONS OF THE STATE OF DELAWARE; AND (III) AGREES TO PAY ITS COST AND EXPENSES IN CONNECTION WITH THE ARBITRATION, INCLUDING, BUT NOT LIMITED TO, ARBITRATORS' FEES, ADMINISTRATION FEES AND ATTORNEYS' FEES.

11. To secure the full and timely payment by Applicant to Seller of all now existing and later arising amounts due Seller, in addition to any other security Applicant may provide to Seller under any subsequent agreement, Applicant grants to Seller a security interest in all of Applicant's personal property, both now owned or at any time in the future acquired and wherever located, including, but not limited to accounts, goods, inventory, equipment, fixtures and vehicles, together with the proceeds and products of any of them. Applicant authorizes Seller to file and perfect any and all statutory lien rights and any rights under indemnity or performance bonds regardless of whether payment is then due to Seller. In addition, Applicant specifically authorizes Seller to prepare and file without Applicant's signature any Uniform Commercial Code ("UCC") financing statements, amendments to UCC financing statements and any other filings or recordings in all jurisdictions where Seller determines necessary or desirable, and authorizes Seller to describe the collateral in such filings in any manner as Seller determines appropriate.

12. If Applicant ceases doing business with Seller for any reason, including Seller's termination of Applicant's credit privileges, Applicant will immediately purchase (or cause Applicant's approved third party to purchase) from Seller, on a "cash on delivery" basis, all remaining proprietary or special order items in Seller's inventory that were purchased or prepared for Applicant.

13. Applicant acknowledges (i) that Seller may be required from time to time to disclose certain information contained in this Application or in subsequent agreements including in response to requests made by the Office for Foreign Assets Control ("OFAC"), and (ii) that any such disclosure shall not result in a breach of any Seller's obligation to Applicant under this Application or under any subsequent agreement, or result in any obligations or liability on the part of Seller.

14. This Agreement may be delivered by electronic transmission or facsimile which shall be deemed to be an original.

WAIVER OF JURY TRIAL. APPLICANT WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH THE SELLER AND THE APPLICANT MAY BE PARTIES, ARISING OUT OF OR IN ANY WAY PERTAINING TO (A) THIS APPLICATION; AND (B) ANY OTHER DOCUMENTS INCLUDING INVOICES AND SUBSEQUENT AGREEMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE APPLICANT AND THE APPLICANT REPRESENTS AND WARRANTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. APPLICANT FURTHER ACKNOWLEDGES THAT THIS PROVISION IS A SPECIFIC AND MATERIAL ASPECT OF THIS APPLICATION AND THAT SELLER WOULD NOT CONSIDER ENTERING INTO ANY TRANSACTIONS WITH APPLICANT IF THIS PROVISION WERE NOT PART OF THIS APPLICATION.

Applicant Legal Name (Inc., LLC, etc.): Hines Word's Tabe 86, LLC

Signature: [signed]
Print Name: Howard A. Shiller
Title: Managing Member
Date: 4-27-2015

Signature: _____
Print Name: _____
Title: _____
Date: _____

Sales Associate: _____
Terms Requested: 14 Days Net
Terms Approved: NET 14-MH
5-1-15

For Office Use Only:

## PERSONAL GUARANTY

The undersigned, hereinafter referred to individually or collectively as "Guarantor", having a financial interest in Applicant, and benefiting from the transactions contemplated by this Agreement, hereby personally and unconditionally guaranties the payment by Applicant to Sellers of all amounts due and owing now, and from time to time hereafter ("Liabilities"), from Applicant to Sellers. Guarantor expressly waives notice from Sellers of its acceptance and reliance on this Personal Guaranty (this "Guaranty"), notice of sales made to Applicant, and notice of default by Applicant. The obligations of Guarantor hereunder shall not be affected, excused, modified or impaired upon the happening, from time to time, of any event. No set-off, counter-claim or reduction of any obligation, or any defense of any kind or nature which Guarantor has or may have against Applicant or Sellers shall be available hereunder to Guarantor against Sellers. In the event of a default by Applicant on its obligations to Sellers, Sellers may proceed directly to enforce their rights hereunder and shall have the right to proceed first against Guarantor, without proceeding with or exhausting any other remedies it may have. Guarantor (i) hereby acknowledges that he or she may have rights of indemnification, contribution, reimbursement or exoneration from Applicant if Guarantor performs his or her obligations under this Guaranty (collectively the "Rights"); (ii) understands the benefits of having such Rights. Guarantor authorizes Sellers to obtain from time to time a consumer credit report and asset/lien search, in order to further evaluate the credit worthiness of Guarantor in connection with extension of credit under this Guaranty. Guarantor irrevocably agrees to provide personal financial statements, historical tax return or other similar financial documents as requested from Sellers from time to time, for continuing and ongoing consideration for extension of credit under this Guaranty. Guarantor agrees to pay all costs, expenses and fees, including reasonable attorneys' fees and expenses, which may be incurred by Sellers in enforcing this Guaranty or protecting their rights following any default on the part of Guarantor. Guarantor agrees that an interest charge of one and one-half (1+½%) percent per month, or the maximum rate that Guarantor may lawfully contract to pay, whichever is less, and in all events calculated in accordance with applicable law, shall be assessed on any amount due and owing to Sellers by Guarantor under this Guaranty until collected. This Guaranty shall be binding upon Guarantor, Guarantor's heirs, successors, assigns, and representatives and survivors, and shall inure to the benefit of Sellers, and each of them, jointly and severally, their successors, assigns, affiliates and shareholders and may be assigned by Sellers without notice to Guarantor. This Guaranty shall be governed by and interpreted with the laws and decisions of the State of Delaware. Guarantor irrevocably agrees, and hereby consents and submits to the non-exclusive jurisdiction of any state or federal court located in the state where Sellers' operating company which provided this Guaranty is located, without regard to the conflicts of law provisions thereof (the "Applicable State"), with regard to any actions or proceedings arising from, relating to or in connection with the Liabilities, this Guaranty or any collateral or security therefor. Guarantor hereby waives any right Guarantor may have to transfer or change the venue of any litigation brought against it by Sellers and further waives any right to trial by jury. If more than one, the obligations of the undersigned shall be joint and several. This Guaranty may only be terminated upon the prior written notice of Guarantor delivered to Sellers via certified mail or upon the termination of the relationship of Applicant with Sellers provided that such notice of termination shall not release or affect any of Guarantor's liabilities existing as of the date Sellers receive such notice of termination. Guarantor hereby (a) agrees that Sellers may, at Sellers' sole option, require Guarantor to arbitrate any controversy or claim arising out of or relating to this Guaranty or any other issue with the American Arbitration Association in accordance with its Commercial Arbitration rules and any judgment or award rendered in connection therewith shall be entered in any court having jurisdiction thereof, (b) consents to the arbitration in the Applicable State, and to the application of Delaware law with the exception of Delaware conflicts of laws rules, and (c) agrees to pay all costs and expenses in connection with the arbitration, including, but not limited to, arbitrators' fees, administration fees and attorneys' fees. If there are more than one of the undersigned, each shall remain liable on this Guaranty until each has given separate written notice delivered via certified mail to Sellers. Guarantor shall immediately notify Sellers, in writing via certified mail, in the event of any sale of a significant portion of Guarantor's interest in the capital stock or other ownership interest of Applicant.

X _____
(Signature)         (Print Name)         (Social Security Number)         (Home Address)         (Date)

X _____
(Signature)         (Print Name)         (Social Security Number)         (Home Address)         (Date)

X _____
(Signature)         (Print Name)         (Social Security Number)         (Home Address)         (Date)

X _____
(Signature)         (Print Name)         (Social Security Number)         (Home Address)         (Date)

(USE OF A CORPORATE TITLE SHALL IN NO WAY LIMIT THE PERSONAL LIABILITY OF THE SIGNATORY)

## ACH AUTO-DEDUCT/DIRECT DEBIT ENROLLMENT

### QUESTIONS? Call 800-253-8277 (Option 6)

EFFECTIVE DATE: _____ CUSTOMER #: _____ DIVISION: _____

BUS. NAME: _____ CONTACT NAME: _____

BILLING STREET ADDRESS: _____ *E-MAIL: _____

CITY: _____ STATE: _____ ZIP CODE: _____

BEST PHONE NUMBER TO REACH YOU AT: _____ FAX NUMBER: _____

[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]                    [ ][ ][ ][ ][ ][ ][ ][ ][ ]
ENTER BANK ACCOUNT NUMBER                                                 ENTER 9 DIGIT ROUTING NUMBER

ENTER BANK NAME: _____

### Please Attach a Copy of a *Blank Voided Check*

Our company agrees to pay US Foods, Inc. by electronic funds transfer and hereby authorizes US Foods or its designated representative to periodically debit the undersigned bank account(s) in line with payment terms provided by US Foods. It is acknowledged that US Foods will have no authority to draw upon the bank accounts of the undersigned at any time prior to the due date based on your payment terms as indicated on your invoice. In no event will US Foods be authorized to withdraw any amounts in excess of the net invoice amount. Credits due and identified at the time of delivery will also be applied to the invoice prior to initiating the debit.

This agreement may be revoked by the undersigned or US Foods upon 30 days written notice to either party. This agreement may be revoked immediately by US Foods upon notification that any charge due has not been paid due to insufficient funds or is paid but reversed by any bank of notice to US Foods of the undersigned's bankruptcy.

In the event my electronic debit or transfer is returned, I agree that a $25.00 return item fee will be electronically charged to my account.

The undersigned agrees to provide a copy of this agreement to its bank or other depository from which the direct debits are to be made and shall request such bank to cooperate with US Foods in the payment of all charges.

| To: | To the Undersigned: |
|---|---|
| US Foods, Inc. | Company Name: _____ |
| Attn: AR - Auto Deduct | Attention: _____ |
| 10410 S. 50th Place | Street: _____ |
| Phoenix, AZ 85044 | City, State, Zip: _____ |

Signature: _____ Date: _____

Print Name and Title: _____

REV 9/2013